Page, case number 242330. Thank you. Mr. Johnson. Thank you. My name is Barclay Johnson. I'm pleased to be here on behalf of Jaden Page. The violation in this supervised release violation case rests on a uniquely bad witness, Daniel Clark. He was also the only witness to an alleged unlawful restraint offense in which Jaden Page allegedly tied him up. Law enforcement never did any other investigation, and when Clark disappeared, the state case was dismissed. The government attempts to avoid Clark's spectacular inconsistencies and says Clark was consistent, at least on the essence of his claim that Clark stole from Jaden Page and that Page tied him up. But even when you reduce it to those two pieces, Clark wasn't consistent because in his initial report to a state trooper, Clark portrayed himself as an innocent victim, saying that he was tied up only because Mr. Page thought he stole from him. In actuality, he was inconsistent on the date of the assault, the origin. Even when you say that he was inconsistent on the date of the assault, Mr. Clark has got a number of different problems, at least based on the record, but he was consistent that it was late August to early September. Is that correct? I don't think so. He ultimately says initially that it happened on August 23rd. Four months later, speaking to investigators, he couldn't give a specific date, says it happened in or about August. In the same interview, he provides an inconsistent date because he says it happened four or five days before he reported it, so that would have been September 2nd or 3rd. At the hearing 10 days later, he repeatedly says he can't remember the exact date. He eventually ventures a couple guesses, saying around the Miggle, around the end of August, and even when he's given other chronological landmarks, such as when he lost his job at Denny's, he couldn't provide a date. Isn't this all a credibility finding for the court? It is. I mean, we have any number of circumstances where witnesses give inconsistent testimony, and the fact finder, whether the jury or the judge, has to decide whether to believe him, and then we defer to that. Why is this different? I think cumulatively, there's a point at which the inconsistencies mean you just cannot believe what Mr. Clark is saying, and this is one of those rare cases where the inconsistencies add up, and they're not small inconsistencies. The date, you know, we hammer on about the date, but this was supposedly a memorable event. It happened just a few months earlier, and it coincided with the loss of his housing, the loss of his job, and his inability to give a date, let alone a consistent date, is a huge red flag, and it was clear error for the district court to conclude that the government established the violation happened on or about September 7th. Improbably, you know, he could remember other specific dates, but was unable to remember negative or unflattering things about the events. For example, he says he could remember the exact date he returned to Vermont, you know, December 18th, 2022, which the government says shouldn't be surprising because it was the week before Christmas, but I think that only tends to highlight his inability to remember the date of this memorable assault, even when he is provided with chronological landmarks, such as when he lost his job at Dunny's. Far from helping his claim, his other claims of wrongdoing on Mr. Page's part only highlight his untruthfulness. You know, he claims that, he told investigators that Mr. Page possessed three firearms that he identified by color, a caliber and manufacturer, a silver .45 caliber pistol, a mini black colored firearm, and a hunter green nine millimeter Glock or similar style firearm. But later, just ten days later, he says he never saw Mr. Page possess a firearm. And he couldn't say exactly where they were stored and didn't identify them by color or caliber or manufacturer. And even that description doesn't describe the wild changes in his testimony within just a few seconds. On direct examination, as we point out, he says he saw Mr. Page with firearms three or four times. But then he changes to saying, well, really, you know, I just saw guns. You know, sometimes guns, they would be in the house and he would leave and they would still be there. And the gist of that, in other words, that Mr. Page had guns, whether he had them in his possession, whether he let others possess them on his behalf, the gist of it, wasn't Mr. Clark consistent about that? I don't think so. He doesn't say they were, he doesn't specifically say they were Mr. Page's. He just says, I saw guns. Sometimes they were there. Mr. Page would leave and they would still be there. They were hidden. And that's in contrast, though, to testimony from Robert Cann, who rented the bedrooms to these two men, who says, look, I never saw firearms. I was a nosy guy. I, you know, went in people's rooms. I wouldn't, I didn't see firearms. I wouldn't have allowed them because I have these dogs that I care about. Now, Chief Judge Rice did not fully credit that testimony. Is that correct? I think so. Yeah. And to pick up on Judge Raggi's question, look, we were not there. We were not able to assess the demeanor of these witnesses and inconsistencies or not. What exactly are you, under what framework would you ask us to assign error to her credibility finding here? It's clear error. I think. I know that, but how do I figure that out? There were some inconsistencies. You know, you and I, we've all seen trials where people are inconsistent, either because they're scared, they're nervous, they can't remember, and so on. He's got other issues. I granted at least based on the record. But the core of it is corroborated certainly by the Vermont State Police Affidavit and other statements where, for example, he is visibly scared and reluctant to speak, but he provides this statement relatively soon after the incident. And it's generally consistent. The Vermont State Police Affidavit is based solely and exclusively on what Mr. Clark tells him. And, you know, I agree. If we were talking about just the date or just the origin of the offense or just the description of the offense or just, you know, his statements about firearms or just his statements about drugs, we would not be here. Can you point us to a case in which we have held that inconsistencies precluded finding credibility as a matter of law? Well, I can't right here. I'd be happy to provide other reasons. There's no case cited in your brief, right? No. Okay, which was the opportunity to do so. And here we're dealing with a preponderance standard. I mean, we have this issue come up at trial where it's proof beyond a reasonable doubt standard. So what are you asking us to do, hold something that is not supported by any of our precedent? I'm asking you to look at the facts. And what we're saying is at some point, and we think this is the point, the cumulative inconsistencies, and I think I'm being generous when I say they're inconsistencies. I mean, he can provide a date, then he can't provide a date, mean that it was clear error to conclude that the offense happened on September 7th, 2023.  So you've reserved some time for rebuttal, Mr. Johnson.  We'll hear from Mr. Greer together, and then we'll hear again from you. Thank you. Mr. Greer. Thank you, Judge Loyer. May it please the Court, Matthew Greer on behalf of the United States. This Court should affirm for two reasons. First, the District Court's revocation decision rested on a straightforward credibility determination that is entitled to strong deference by this Court. Second, the District Court acted well within its statutory and constitutional authority in considering information from the PSR that it had adopted as findings of fact at sentencing on the defendant's underlying conviction. The District Court explained in its extensive findings of fact why it credited Mr. Clark's testimony. That is the type of credibility determination that this Court has long held lies solely in the province of the fact finder. Even where there are inconsistencies and competing inferences that could be drawn, this Court defers to the fact finder's resolution of the weight of the evidence. That rule resolves this case. I'm happy to answer any questions the Court has. Otherwise, we'd ask that you affirm. Well, you mentioned the PSR, which Mr. Johnson did not. And it does not appear that the District Court engaged in sort of balancing tests with respect to information and facts such as they are in the PSR. So what do we make of that? Remind me, Mr. Greer, how did the District Court use that particular paragraph or section in the PSR? Judge Loy, I'll start by saying that before revoking the defendant's supervised release, the District Court was required to consider the history and characteristics of the defendant under Section 3583E. That information, by rule, is contained in the PSR. So what the District Court did was statutorily authorize. The District Court had further reduced that paragraph of the PSR to a finding of fact at a contested sentencing hearing. The evidentiary basis for it doing so was the in-court testimony of a witness that it explicitly found to be credible. That's at page 217 of the sentencing transcript. So the District Court ----  That's right, Judge Loy, Ms. Fish, who was the witness to the immediate aftermath of a very similar assault by the defendant. And at the revocation hearing, at the revocation stage, the District Court found that all of that evidence supporting the paragraph of the PSR had been disclosed to the defendant. He had an opportunity to contest it. He had an opportunity to cross-examine Ms. Fish and did so at the underlying sentencing hearing. And that is all that due process and Rule 32.1 require. And the second part of your question, Judge Loy, there's nothing in the District Court's extensive findings of fact that would indicate that the PSR was some sort of linchpin in its analysis of the revocation here. It considered it only for the limited purpose of rebutting the defendant's theory, which was not only that Mr. Clark made this whole thing up, but that his story was so incredible and fantastical that it's something out of the movies. So that was not clear error. But even if you disagree with everything that I just said about the PSR, this is subject to harmless error analysis. And so the fact that the District Court credited Mr. Clark is an independently sufficient basis on which to revoke the defendant's supervised release. And so any error with respect to the PSR was harmless. Thank you. Thank you very much. Mr. Johnson. I think we strongly disagree that this wasn't the linchpin. We pointed out at great length the problems with Daniel Clark, and the District Court doesn't use it simply to rebut Mr. Page's claim. It uses it expressly to bolster Mr. Clark's testimony and to rebut what Mr. Page has claimed about Mr. Clark's untruthfulness. The district judge says I'm only using this to rebut, I think, to rebut this claim that Mr. Clark's testimony is fantastical and so on. It says it uses it to bolster his testimony, Daniel Clark's testimony, and to rebut Mr. Page's claims about Mr. Clark's untruthfulness. There was never any analysis under Rule 32.1 or the Due Process Clause, and we're not dealing here with a case where we have competing inferences. This is a series of ---- Well, let me ask you this, Mr. Johnson. You heard the government. If we were to disagree with the first part of your argument related to asking us to assign error to the district court judge's credibility determination, would you agree that that is an independent basis for the findings of the fact, well, the conclusions of law here? I don't think so. I think even taking it as the district court sets it out, it's apparent that Mr. Clark's testimony is not enough to put it over the goal line and that the district court looks to Well, why is that? I mean, Mr. Clark's testimony, I think you would agree, if it were credited, would be a violation of Vermont criminal law. At least that part of the second degree provision. So why wouldn't it be an independent basis to revoke the terms of the supervisor's release? A couple of reasons. I think the first is Mr. Clark still has these inconsistencies and the district court never set out these individual, you know, I'm deciding it on the one hand because of the testimony and on the other hand because of this other information from the PSR that I'm using. And I do just want to say in conclusion, look, this is a strong, officious testimony is a red herring. That's not what the district court relied on. It's not what the government asked it to rely on. The government asked it to rely on paragraph 25C and that's what the district court relied on. And that's another person's testimony, right? That is somebody who didn't testify, who made statements to the grand jury. Right. I think caution is warranted here because this is really pure other bad-ass evidence and it's being used for a propensity purpose. Mr. Page did this before and you can believe this unreliable witness because he did it before and he did it again. But then there was a charge of fabricating, that this is entirely fabricated. And the idea or the argument is that we, the government, has an opportunity to rebut that charge of fabrication by Mr. Clark by introducing that evidence. Again, we think in general the courts can rely on PSRs. Indeed, district courts and parties rely on them all the time. Much of what's in the PSR is not disputed. It's biographical. But the problem arises here, as in this case, when the information is disputed and when it's used to push a witness like Daniel Clark's testimony over the finish line. Thank you very much. Thank you for traveling from Vermont. And we will reserve the decision.